609 N.W.2d 418 (2000)
2000 ND 87
In the Matter of Application for DISCIPLINARY ACTION AGAINST Scott J. McDONALD, a Member of the Bar of the State of North Dakota.
Disciplinary Board of the Supreme Court of the State of North Dakota, Petitioner,
v.
Scott J. McDonald, Respondent.
Nos. 990359-990361.
Supreme Court of North Dakota.
April 25, 2000.
*420 Paul W. Jacobson, Disciplinary Counsel, Bismarck, N.D., for petitioner.
James S. Hill, Zuger Kirmis & Smith, Bismarck, N.D., for respondent.
PER CURIAM.
[¶ 1] The Disciplinary Board petitions for disciplinary action against Scott J. McDonald for making a statement of fact and offering evidence to a court which he knew was false. We conclude there is clear and convincing evidence McDonald violated N.D.R. Prof. Conduct 3.3(a), and we order McDonald be suspended from the practice of law for six months and one day, successfully complete the Multistate Professional Responsibility Examination, and pay the full costs of the disciplinary proceedings.

I
[¶ 2] McDonald was admitted to practice law in North Dakota on May 29, 1987. During the period relevant to this case, McDonald was a sole practitioner in Bowman. In June 1993, McDonald represented Howard Brooks in making a claim for abandoned mineral interests in Slope County. At the time, McDonald had one full-time secretary, Becky Hodell, on his staff. A part-time secretary, Carolyn Russell, worked occasionally when additional assistance was needed. With Russell's help, McDonald prepared a notice of lapse of mineral interest under N.D.C.C. ch. 38-18.1. He directed Russell to have the notice published in the official county newspaper; mail the notice to Mabel E. and J.L. Albright, the owners of the mineral interests, at their last known post office address within 10 days of the final publication; and file the notice and an affidavit of service with the Slope County Register of Deeds.
[¶ 3] In July 1993, the notice was published in the Slope County Messenger. In August or September 1993, Russell told McDonald everything had been completed for the termination of the mineral interests, and McDonald had the Brooks file placed with his inactive files. Russell no longer worked for McDonald after June 1995.
[¶ 4] In April 1996, client Brooks asked McDonald whether the Albrights' mineral interests were terminated, because Brooks had discovered the notice had not been filed with the Slope County Register of Deeds. McDonald reviewed the file and found the notice and an affidavit of service had not been recorded with the Register of Deeds, and no affidavit of service of the notice had been prepared. According to McDonald, there was an envelope in the file which appeared to have the notice addressed to the Albrights and which had been returned by the United States Postal Service as being undeliverable. In May 1996, McDonald recorded the notice of lapse of mineral interest and an affidavit of *421 publication with the Slope County Register of Deeds, but did not record an affidavit of service of the notice.
[¶ 5] In November 1996, the Albright heirs brought a quiet title action against members of the Brooks family, seeking to eliminate the notice of lapse of mineral interest from the title of the property and to have the Brookses declared as having no interest in the mineral acres. In December 1996, McDonald answered the quiet title action on behalf of the Brookses. In January 1997, the Albright heirs moved for summary judgment. McDonald opposed the summary judgment motion and made a counter-motion for summary judgment, arguing the mineral interests of the Albright heirs had terminated under the provisions of N.D.C.C. ch. 38-18.1. With his response, McDonald filed an affidavit in which he claimed:
3. That on the 20th day of July, 1993, my office did cause to be placed in the United States Mails, a photocopy of Brooks' Notice of Lapse of Mineral Interest, addressed to J.L. Albright and Mabel Albright at 6922 South Halstead Street, Chicago, Illinois; and
4. That on August 3, 1993, the United States Post Office returned the said envelope containing Brooks' Notice of Lapse of Mineral Interest addressed to J.L. Albright and Mabel Albright, to my law office, and that the envelope was marked by the United States Post Office as being "Undeliverable", at which time the said envelope was placed into my file.
[¶ 6] McDonald argued in his brief to the trial court that title vested in the surface owner, Brooks, because the procedural requirements under N.D.C.C. ch. 38-18.1 were satisfied:
In this action, there is no question that publication was made once each week in the official county newspaper in the county in which these minerals are located. Additionally, as the attached Affidavits and copies of the return delivery of the certified mailings show, the Notice was not only properly published, but was also sent to the last known mailing address of the alleged mineral interest owners, J.L. Albright and Mabel Albright. This Notice was mailed within 10 days of the date after the last publication date of the Notice of Lapse of Mineral Interest on July 15, 1993. See Exhibit "3". It is also clear that a copy of the Notice and the Affidavit of the Service of the Notice by publication was recorded in the office of the Register of Deeds in the County in which the mineral interests are located. Pursuant to North Dakota Century Code § 38-18.1-06, this is prima facie evidence in these legal proceedings that such notice has been given.
[¶ 7] Along with these materials, McDonald also filed a photocopy of the envelope which was purportedly mailed to the Albrights on July 20, 1993, and a photocopy of the Postal Service's "Domestic Return Receipt," "PS Form 3811." The attorney for the Albright heirs noticed discrepancies on the envelope and the Form 3811. The postmark date on the envelope was "JUL 20," but no year was indicated. The Form 3811 had a publication date of "December 1994."
[¶ 8] The attorney for the Albright heirs filed an affidavit from the Dickinson Postmaster, who said the "Form 3811 was not available for use by the United States Post Office or its patrons until sometime late in 1994, or perhaps even early 1995." The Albrights' attorney also served a subpoena duces tecum on McDonald requiring him to bring the envelope and the mailing receipts to the summary judgment hearing. McDonald withdrew his reliance on the alleged July 20, 1993 mailing, and turned to an older notice of abandonment of mineral interests which had been recorded in 1988 to support Brooks' legal position. The trial court ruled in favor of the Albright heirs, and McDonald personally *422 paid the costs of judgment. These disciplinary proceedings were instituted.
[¶ 9] When the envelope, which was purportedly mailed on July 20, 1993 to the Albrights, was opened at the disciplinary hearing for the first time since it was filed in the quiet title action, it contained a copy of the notice of lapse of mineral interest dated June 21, 1993, and a copy of the affidavit of publication. The affidavit of publication was sworn and subscribed to on August 6, 1993, 17 days after McDonald said the envelope was mailed. McDonald claimed Russell mailed the envelope. Russell did not testify at the hearing and her whereabouts are unknown.[1]
[¶ 10] The hearing body found the envelope was not mailed on July 20, 1993, "but the circumstances make it clear the envelope was placed in the mail after [McDonald] reviewed his file in April, 1996 on or about July 20, 1996." The hearing body also found not all of the markings on the envelope were made by Postal Service personnel:
McDonald testified Russell told him in August or September, 1993 that she had completed everything which needed to be done to terminate the mineral interests for Brooks. She was not employed by McDonald after June 2, 1995. The envelope placed in the mail to Mabel E. Albright and J.L. Albright on or about July 20, 1996 and which was found undeliverable by the Postal Service and placed in McDonald's file, was not placed there by Carolyn Russell. Someone in McDonald's office created a forgery of an envelope to evidence mailing of a Notice of Lapse of Mineral Interest to Mabel E. Albright and J.L. Albright, M.D. Only Russell and McDonald had motive to do so, and only McDonald had the opportunity to do so.
Reasonable inferences drawn from the circumstantial evidence and other evidence provide testimony of clear and convincing proof that when McDonald discovered the statutory requirements had not been met for the termination of a mineral interest during his review of the file for Brooks in April, 1996, that he acted on or about July 20, 1996 to create a forgery of an envelope to falsely suggest mailing of a Notice of Lapse of Mineral Interest to Mabel E. Albright and J.L. Albright, M.D. on July 20, 1993. The forgery was prepared in order to give the appearance of compliance with statutory requirements for the termination of the Albright mineral interest.
[¶ 11] The hearing body concluded that when McDonald filed his affidavit in the quiet title action, the forged envelope he created evidenced a mailing of the notice in compliance with the statutory requirements for terminating mineral interests, and in the affidavit McDonald "made a statement of fact to the Court and offered evidence to the Court which he knew to be false in violation of N.D.R. Prof. Conduct 3.3(a)." As a sanction, the hearing body recommended McDonald's license to practice law be suspended for 60 days and he be ordered to pay the costs of the disciplinary proceeding.
[¶ 12] The Disciplinary Board adopted the report of the hearing body, but recommended McDonald pay one-half of the *423 costs of the proceedings and submitted its report to this Court. McDonald timely filed objections to the report and both parties presented briefs and oral argument. We consider the Board's report under N.D.R. Lawyer Discipl. 3.1(F).

II
[¶ 13] We review disciplinary proceedings against attorneys de novo on the record under a clear and convincing standard of proof. Disciplinary Board v. Dooley, 1999 ND 184, ¶ 12, 599 N.W.2d 619. We give due weight to the findings, conclusions, and recommendations of the Board, but we do not act as a "rubber stamp" for those findings and recommendations. Disciplinary Board v. Landon, 1999 ND 202, ¶ 10, 600 N.W.2d 856. When the hearing panel has heard the witnesses and observed their demeanor, we accord special deference to its findings on matters of conflicting evidence. Disciplinary Board v. Lamont, 1997 ND 63, ¶ 15, 561 N.W.2d 650. Each disciplinary case must be considered upon its own facts to decide what discipline is warranted. Disciplinary Board v. Seaworth, 1999 ND 229, ¶ 23, 603 N.W.2d 176.

A
[¶ 14] The Board found McDonald violated N.D.R. Prof. Conduct 3.3(a), which provides, "A lawyer shall not: (1) Make a statement to a tribunal of fact or law that the lawyer knows to be false; or (2) Offer evidence that the lawyer knows to be false." See also N.D.C.C. § 27-13-01(6) (requiring attorneys shall "never seek to mislead the judge or jury by any artifice or false statement of fact or law"). The high duty of candor placed upon attorneys is summarized in Disciplinary Board v. Kaiser, 484 N.W.2d 102, 108 (N.D.1992) (citations omitted):
"`Truth and candor are synonymous with justice, and honesty is an implicit characteristic of the legal profession.' ABA, The Judicial Response to Lawyer Misconduct, III.1, III.3 (1984). The primary function of our judicial system is to find the truth to reach a just conclusion.... Our courts are almost `wholly dependent on members of the bar to marshal and present the true facts....'"

1
[¶ 15] McDonald argues all exhibits relied upon by the Board were introduced by McDonald and not by disciplinary counsel during his case-in-chief, and because McDonald moved for a "directed verdict" at the close of disciplinary counsel's case-in-chief, we cannot rely on this material in determining whether there is clear and convincing evidence he violated N.D.R. Prof. Conduct 3.3(a).
[¶ 16] Although disciplinary proceedings are neither civil nor criminal, but quasi-judicial in nature, the Rules of Evidence and Civil Procedure apply "insofar as appropriate...." N.D.R. Lawyer Discipl. 3.5(B). In a criminal context, a defendant permits this Court to review the entire record to determine whether sufficient evidence exists to sustain the verdict if the defendant presents evidence after a N.D.R.Crim.P. 29(a) motion for judgment of acquittal is denied. See State v. Jones, 557 N.W.2d 375, 377 (N.D.1996). A similar result ensues in a civil context when a defendant moves for judgment as a matter of law under N.D.R.Civ.P. 50(a). "Technically a party waives the right to a judgment as a matter of law if the motion is made at the close of the opponent's case, and thereafter the moving party introduces evidence in its own behalf." 9A Wright & Miller, Federal Practice and Procedure: Civil 2d § 2534, at p. 322 (1995) (footnote omitted) (discussing the federal counterpart to N.D.R.Civ.P. 50(a)). See also Pease v. Magill, 17 N.D. 166, 169, 115 N.W. 260, 261 (1908). Because McDonald presented evidence after his motion for "directed verdict" was denied by the hearing body, we are not procedurally bound to review only the evidence presented *424 by disciplinary counsel, but can review the entire record of the proceedings.

2
[¶ 17] McDonald argues he is entitled to all reasonable and favorable inferences from the evidence because he has denied any wrongdoing and witnesses are presumed to tell the truth.
[¶ 18] The presumption that a witness has told the truth is easily rebuttable by evidence to the contrary. See Andrews v. O'Hearn, 387 N.W.2d 716, 730 (N.D.1986). This presumption may be rebutted by circumstantial evidence or a combination of both direct evidence and circumstantial evidence. See Lovas v. St. Paul Ins. Companies, 240 N.W.2d 53, 61 (N.D.1976). We have recognized the concurrence of well-authenticated circumstances can be stronger evidence than positive testimony unconfirmed by circumstances. Id. If circumstantial evidence clearly and convincingly establishes that McDonald violated N.D.R. Prof. Conduct 3.3(a), the presumption is dissipated and McDonald is not entitled to the benefit of any favorable inferences.

3
[¶ 19] McDonald challenges several of the Board's findings of fact in support of his argument there is no clear and convincing evidence he violated N.D.R. Prof. Conduct 3.3(a). The Board found the "Notice and an Affidavit of Service [of the notice] was not filed with the Register of Deeds of Slope County, as required by statute." McDonald claims no pertinent statute was read into the record and no expert testimony was given in the disciplinary proceedings to establish he had not complied with the requirements for terminating mineral interests. According to McDonald, this error places all of the Board's factual findings in question because it is critical to the Board's ultimate finding McDonald had a motive to, and did, create a false affidavit and falsify evidence.
[¶ 20] Courts and administrative hearing bodies may take judicial notice of state laws even if the law is not formally submitted and received in evidence or requested to be officially noticed. Walter v. North Dakota State Highway Com'r, 391 N.W.2d 155, 158 (N.D.1986). The Board, through its hearing bodies, may do the same. Under N.D.C.C. § 38-18.1-06(4), "[a] copy of the notice and an affidavit of service of the notice must be recorded in the office of the register of deeds of the county in which the mineral interest is located" to constitute prima facie evidence that notice has been given to successfully terminate mineral interests. See also Spring Creek Ranch, LLC v. Svenberg, 1999 ND 113, ¶ 11, 595 N.W.2d 323. There is nothing incorrect or improper about the Board's finding McDonald did not comply with the statutory requirements that would undermine the Board's other findings.

4
[¶ 21] McDonald argues the Board's finding that not all markings on the envelope addressed to the Albrights were made by Postal Service personnel is not supported by credible evidence.
[¶ 22] John Callinan, a United States postal inspector, testified that while he believed the envelope at some point in time probably did go through the mail, there were various discrepancies on the face of the envelope. Callinan noted the postage meter impression with no year in the date was "very unusual and it's against our postal regulations to make a meter imprint without a full date in it on first class mail." He also testified postal records reflected the Form 3811, with a publication date of December 1994, had a delivery date of May 12, 1995, "and sometime after the delivery date ... they would go to our supply centers for supply to the post offices around the country." Callinan testified a stamped impression on the lower left hand corner of the envelope was customary, but the writing on the stamped impression *425 was not. According to Callinan, the date written on the stamp for the first notice of the certified mail was "7-24," and the second notice should have been five days later, but instead was noted as being attempted on "7-26." Callinan said 15 days after the first notice was given, the letter would be returned, but the return date written was "7-31," only seven days after the first notice. Callinan also testified he did not believe a postal employee wrote "MLNA 65807" on the face of the envelope. Although "MLNA" is a Postal Service acronym for "Moved Left No Address," the five digit number following it is supposed to be the zip code of the delivery number, and 65807 is the zip code for Springfield, Missouri, not Chicago, Illinois. We conclude there is credible evidence to support the Board's finding that not all markings on the envelope were made by Postal Service personnel.

5
[¶ 23] McDonald argues the Board's finding that the envelope was placed in the mail "on or about July 20, 1996" is also not supported by the evidence.
[¶ 24] The evidence clearly shows the letter was not mailed on July 20, 1993, as McDonald initially claimed, but must have been mailed sometime after that date. McDonald testified he placed the Brooks file in his inactive files in September 1993 and did nothing more with it until Brooks contacted him in April 1996. McDonald then discovered the notice and affidavit of service had not been recorded with the Register of Deeds. Callinan testified the Form 3811 used on the envelope would not have been available for use until "sometime after" May 12, 1995. The postmark date on the envelope was "JUL 20." Considering the recent reactivation of the Brooks file in April 1996, we believe the evidence strongly suggests the most plausible date the envelope was placed in the mail was, as the Board found, July 20, 1996.

6
[¶ 25] McDonald contends the Board's finding that Russell did not mail the envelope is not supported by the evidence. McDonald does not claim Hodell mailed the envelope, but argues Russell, his part-time secretary, could have done so.
[¶ 26] The earliest the letter could have been mailed was "sometime after" May 12, 1995, and McDonald's records showed Russell was not employed by McDonald after June 2, 1995. McDonald placed the Brooks file with his inactive files in September 1993, and it seems highly improbable Russell would open the Brooks inactive file and mail the envelope shortly before her employment ended. We believe the circumstantial evidence clearly supports the Board's finding Russell did not mail the envelope.

7
[¶ 27] McDonald argues there is no clear and convincing evidence he forged the envelope and made a statement of fact and offered evidence he knew was false to the court in the quiet title action. The only reasonable conclusion to be drawn from the circumstantial evidence in this case is that McDonald falsified the envelope to attempt to show compliance with N.D.C.C. ch. 38-18.1, and then used this evidence in an attempt to support Brooks' legal position in the Albrights' quiet title action.
[¶ 28] The evidence shows someone in McDonald's office falsified the envelope to show a notice of lapse of mineral interest was mailed to the Albrights on July 20, 1993. McDonald testified Hodell would not have had a motive, and would not have done so. McDonald testified Russell could have had a motive to falsify the mailing, but the only motive for Russell to do so would be to cover up her mistake, and it seems highly improbable Russell would open an inactive file almost two years after the fact to correct the mistake. McDonald, as Russell's supervisor, certainly *426 had a more substantial motive to falsify the mailing. Considering these circumstances and the minuscule window between the time the Form 3811 might have been available for use in Bowman and the time Russell left McDonald's employment, we agree with the Board that McDonald had the most opportunity and strongest motive to falsify the mailing.
[¶ 29] We reject McDonald's contention the affidavit and envelope were never actually "submitted" to the court in the quiet title action because he conceded the mailing was defective and thereafter relied on an alternative argument to support Brooks' claim to the mineral interests. McDonald did file a false affidavit and a photocopy of the falsified mailing with the district court in the quiet title action. McDonald's eventual withdrawal of the falsified evidence, only after its authenticity was challenged by opposing counsel, does not erase the ethical violation.
[¶ 30] We conclude there is clear and convincing circumstantial evidence that McDonald made a statement of fact and offered evidence which he knew was false to a court in violation of N.D.R. Prof. Conduct 3.3(a).

B
[¶ 31] McDonald argues he was denied due process because his hearing was held on November 24, 1998, more than 14 months after the petition for discipline was filed, and the hearing body did not issue its findings and recommendations until September 13, 1999, almost 10 months after the hearing.
[¶ 32] While the length of the delay is very troubling, we see no "grave injustice" in the 14-month delay between the filing of the petition for discipline and the hearing. Disciplinary Board v. Dvorak, 1998 ND 134, ¶ 24, 580 N.W.2d 586. The record reflects much of this time was spent by both parties attempting to find Russell. Although the hearing body exceeded the 60-day time limit under N.D.R. Lawyer Discipl. 3.1(F) for submitting its report, this time limit is directory, rather than jurisdictional, and the failure to observe prescribed time intervals does not abate a disciplinary proceeding. N.D.R. Lawyer Discipl. 3.5(H). See also Landon, 1999 ND 202, ¶ 8, 600 N.W.2d 856; Disciplinary Board v. Ellis, 504 N.W.2d 559, 562 (N.D.1993).
[¶ 33] In Matter of Wireman, 270 Ind. 344, 367 N.E.2d 1368, 1370 (1977), the Indiana Supreme Court said:
Due process, as applied to disciplinary proceedings involving attorneys, requires notice of the charges and an opportunity to be heard.... Beyond these requirements, there is no authority to suggest that the expiration of a time period would establish a constitutional infirmity mandating dismissal of all charges. There may be hypothetical factual situations where this expiration of time destroys the fundamental fairness of the entire disciplinary process; however, there is no evidence in the present case to warrant such determination.
(Citations omitted). Likewise, we find nothing in this case to warrant a determination that the delay in submitting the report destroyed the fundamental fairness of this disciplinary process.

III
[¶ 34] The Board recommends McDonald be suspended from the practice of law for 60 days and pay $3,307.18, one-half the costs of the disciplinary proceedings. Disciplinary counsel argues McDonald should be suspended for some period longer than six months, preferably one year, and he should be required to pay the full costs of the disciplinary proceedings, $6,614.36. McDonald argues an admonition would be appropriate under the circumstances of this case.
[¶ 35] In determining the appropriate sanction, we are guided by N.D. Stds. Imposing Lawyer Sanctions 6.1:

*427 Rule 6.1. False statements, fraud, and misrepresentation.

Absent aggravating or mitigating circumstances, upon application of the factors set out in N.D. Stds. Imposing Lawyer Sanctions 3.0, the following sanctions are generally appropriate in cases involving conduct that is prejudicial to the administration of justice or that involves dishonesty, fraud, deceit, or misrepresentation to a court:
6.11 Disbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material information, and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding.
6.12 Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.
[¶ 36] We reject the Board's recommendation that McDonald be suspended from the practice of law for 60 days. An attorney's deliberate use of false testimony or falsified evidence in a judicial proceeding is antithetical to the oath, the standards, and the ideals of the legal profession. See Lamont, 1997 ND 63, ¶ 19, 561 N.W.2d 650; Kaiser, 484 N.W.2d at 109. In Kaiser, we suspended an attorney from the practice of law for two years for testifying falsely under oath on two occasions. In that case, although the attorney admitted the violations of the Code of Professional Responsibility, the attorney's first episode of false testimony "had a profound effect on the outcome of that litigation, and on the decision by this court in that litigation" and resulted in "profits of nearly two million dollars to Kaiser and his partners." Kaiser at 107. In Lamont, we suspended an attorney from the practice of law for 60 days for falsely testifying at a trial. However, the lawyer's testimony had no effect on the outcome of the trial and it did not result in any benefit to himself personally or to his client. Lamont at ¶ 20.
[¶ 37] In imposing a sanction, we consider the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors. N.D. Stds. Imposing Lawyer Sanctions 3.0. Deliberately presenting false information to a court is a very serious violation. McDonald denied any wrongdoing, but the Board and this Court have found he committed the violation. McDonald has shown no remorse. There was the potential for a very serious miscarriage of justice because the false affidavit and false document could have served as the basis for a taking by McDonald's client of the mineral interests of the other party. McDonald withdrew the falsified evidence from the court's consideration, but only after its authenticity was challenged by opposing counsel, and the court ultimately found in favor of the Albrights. Even though the intentionally falsified evidence was immaterial to the actual outcome of the litigation, it is nevertheless an extremely serious breach of professional ethics. Kaiser at 107-08.
[¶ 38] The Board found as mitigating factors under N.D. Stds. Imposing Lawyer Discipl. 9.32 that McDonald has no prior disciplinary record, he was inexperienced in the practice of law, and he "practiced by himself in a solo practice in a remote area." While the absence of a prior disciplinary record tilts in McDonald's favor, we do not agree the other factors are mitigating circumstances in this case. McDonald's unethical conduct occurred after he had been practicing law for more than nine years. "After so many years of practice, there is no question that he knew better." Kaiser at 108. Moreover, attorneys "in a solo practice in a *428 remote area" are not subject to a different standard of legal ethics.
[¶ 39] We conclude a suspension of six months and one day from the practice of law is appropriate in this case.[2]
[¶ 40] We also reject the Board's recommendation that McDonald pay only one-half of the costs of the disciplinary proceedings. The Board recommended reducing the amount of costs because the charge of violating N.D.R. Prof. Conduct 8.1 was dismissed. However, the parties agree most of the costs in this proceeding were incurred in attempting to locate Russell. Russell's whereabouts were just as important to McDonald's defense to the N.D.R. Prof Conduct 3.3(a) violation as they were to McDonald's defense to the N.D.R. Prof. Conduct 8.1 violation. We conclude McDonald should pay the entire costs of the disciplinary proceeding.

IV
[¶ 41] We order McDonald be suspended from the practice of law for six months and one day commencing June 1, 2000. McDonald is ordered to pay $6,614.36 for the costs and expenses of the disciplinary proceedings. Before he may practice law again, McDonald must apply for reinstatement in accordance with N.D. Lawyer Discipl. 4.5, including certification by the bar examiners of McDonald's successful completion of the Multistate Professional Responsibility Examination.
[¶ 42] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, MARY MUEHLEN MARING, DALE V. SANDSTROM, CAROL RONNING KAPSNER, JJ., concur.
NOTES
[1] McDonald claimed Russell was also known as Carolyn Bruns and he did not know her before she began working in his office during the spring of 1993. When it was discovered McDonald represented Carolyn Bruns in a 1990 divorce matter, McDonald admitted he was "mixed up about that," and said Bruns and Russell were two separate people. Because of this, McDonald was also charged with violating N.D.R. Prof. Conduct 8.1 by knowingly making a false statement of material fact in connection with a disciplinary matter. The hearing body dismissed this charge, reasoning "[t]he evidence shows confusion by all parties as to the identity of Carolyn Russell, but there is no clear and convincing evidence of a knowing false statement on the part of McDonald." Disciplinary counsel does not challenge dismissal of this charge. McDonald's argument that the entire disciplinary proceeding was contaminated by this charge which was ultimately dismissed by the hearing body is without merit.
[2] Although we sympathize with McDonald for the hardships caused by his spouse's recent automobile accident, the accident occurred after the disciplinary hearing and could not have contributed to or caused his misconduct. See Disciplinary Board v. Crain, 1997 ND 131, 566 N.W.2d 404.