2001 ND 7

In the Matter of the Application for DISCIPLINARY ACTION AGAINST Bruce R. HOWE, a Member of the Bar of the State of North Dakota.

Disciplinary Board of the Supreme Court of the State of North Dakota, Petitioner,

v.

**Bruce R. Howe, Respondent.**

No. 20000211.

Supreme Court of North Dakota.

Jan. 30, 2001.

Paul W. Jacobson, Disciplinary Counsel, Bismarck, ND, for petitioner.

Gary H. Lee, Olson Burns Lee, Minot, ND, for respondent.

PER CURIAM.

[¶ 1] Disciplinary counsel filed a petition for discipline against Bruce R. Howe. Howe contested the allegations of misconduct and was granted a hearing before a hearing panel. Howe did not tender a conditional admission under N.D.R. Lawyer Discipl. 4.2 until after the hearing panel issued its report and recommendation that Howe's license to practice law be suspended for 30 days and disciplinary counsel had filed an objection. Disciplinary counsel has objected to the hearing panel's recommendation that Howe's license to practice law be suspended for 30 days. Asserting this Court has "authority to extend an opportunity to accept discipline by consent as envisioned by Rule 4.2, N.D.R. Lawyer Discipl., even after an objection to the panel recommendation is filed," Howe has tendered "a conditional admission in

exchange for the stated form of discipline, 30 days suspension." Howe withdraws the conditional admission if we reject it, and, alternatively, has raised a number of objections to the hearing panel's report. We reject the tendered conditional admission, and we suspend Howe from the practice of law for six months.

## I

[¶ 2]  Howe became licensed to practice law in North Dakota in 1958.  In 1992, Howe began estate planning for George Schreiber and his sister, Loretta Schreiber.  In 1992, Howe prepared and George executed a will and a trust agreement. The will essentially transferred all estate assets to the trust.  The trust agreement provided that prior charitable pledges were to be honored quickly, provided additional charitable gifts, and provided that upon George's death, his nieces, Dolores Adams, Caroline Renner, and Rose Renner, were each to receive $200,000. George named Loretta the primary beneficiary on a number of annuities.  George's nieces were contingent beneficiaries on the following annuities:

   a.   $79,742.17 Pioneer Mutual Life–Policy # 662510

   b.   $437,277.53 North American Security Life–Policy # 000215850

   c.   $522,960.23 COVA (formerly Xerox Life)-Policy # 74709–1

The trust was not funded before George Schreiber died on October 8, 1995.  After George's death, Howe attempted "to fund the trust via post-mortem estate planning," which ultimately led to the institution of disciplinary proceedings against him in 1999.

[¶ 3] After a hearing on April 5 and 6, 2000, the hearing panel found:

   15.   In order to fund, post mortem, the George Schreiber trust, Howe drafted, and had Loretta execute, a series of "disclaimer and renunciations" for all annuities, "possibly" assuming that Loretta was the sole beneficiary, with no contingent beneficiaries....

   ....

   18....  As testified by Howe's own expert witness, Garry Pearson, Howe had an obligation to inform the nieces of all policies of which they were contingent beneficiaries.  Howe directly violated that obligation, and his conduct from March 20, 1996 forward, leads the Hearing Panel to conclude, by clear and convincing evidence, that Howe made statements and representations to third persons (the nieces), of fact and law, that he knew to be false.  Not only by what was said, but also what Howe failed to say.  Furthermore, the Hearing Panel finds by clear and convincing evidence, that Howe's continued course of conduct constitutes conduct involving dishonesty, fraud, deceit, or misrepresentation.

   19....  In a draft dated April 16, 1996, Pioneer Mutual mistakenly paid policy # 662510 to George's estate.  Howe never advised Pioneer Mutual of their error. He never advised the nieces of his actions or their beneficiary status to Pioneer policy # 662510, in spite of his legal responsibility and obligation to do so.

   ....

   21.   On June 24, 1996, Howe met with Caroline and Rose Renner.  The purpose of the meeting was to have Caroline and Rose sign disclaimers to the COVA annuity.  All three nieces testified at the hearing.  The Hearing Panel finds their testimony to be consistent and credible....  Howe did not advise the nieces of their contingent beneficiary status under the Pioneer policy.  As an incentive to have the nieces sign the disclaimers, Howe told the nieces that if they did not disclaim, the proceeds they received from the COVA annuity would be deducted from their specific bequest under the trust.  They testified that Howe told them they would get more if they disclaimed than they would if they didn't....  The nieces testified that

Howe told them that each would be responsible for $9,700.00 in estate administration fees. Howe did not deny making this statement. He claims it was a mistake. Each of the statements by Howe was false. The hearing panel concludes that at the time Howe made the statements, he knew that the statements were false. The Hearing Panel finds by clear and convincing evidence, that Howe engaged in conduct involving dishonesty, fraud, deceit and misrepresentation.

. . . .

23. Eventually, claims were made against George's estate on behalf of the nieces. Those claims were settled. The nieces received their fair share, and did not sustain any loss as a result of Howe's conduct. It would appear that the only losers of the failure to timely fund the trust were the charitable organizations.

24. As stated earlier, the Hearing panel finds, from clear and convincing evidence, that Howe violated Rule 8.4(d), N.D.R. Prof. Conduct by violating N.D.C.C. § 27–14–02(7), which provides that it is ground for discipline for a lawyer to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation. The Hearing Panel also finds that Howe violated Rule 4.1 N.D.R. Prof. Conduct, which provides that in the course of representing a client a lawyer shall not make a statement to a third person of fact or law that a lawyer knows to be false. Howe's statements to the nieces were false. Howe knew those statements to be false. The statements were made to induce the nieces to disclaim and accomplish what Howe most likely should have done years earlier: timely fund the trust.

. . . .

29. In considering a recommendation of the Hearing Panel for Howe's violations of the Rules of Professional Conduct, we find no evidence that Howe has a prior history or record of violations of the Rules of Professional Conduct. This appears to be his first violation. Howe is, otherwise, a well-respected member of the bar. Nevertheless, his prohibited actions were serious, calculated, and could have resulted in significant loss to the contingent beneficiaries. Howe's conduct is of the type that reflects dishonor on the legal profession and the public's expectation of honesty and candor. The Hearing Body therefore recommends that the license of Bruce R. Howe be suspended for a period of thirty (30) days. The Hearing Body further recommends that Howe be ordered to pay disciplinary counsel's costs, disbursements, and attorney's fees.

## II

[¶ 4] We recently addressed review of disciplinary proceedings in *In re Disciplinary Action Against Robb*, 2000 ND 146, ¶ 8, 615 N.W.2d 125:

We review disciplinary proceedings against attorneys de novo on the record. *Disciplinary Board v. Boughey*, 1999 ND 205, ¶ 8, 602 N.W.2d 268. Disciplinary Counsel must prove each violation by clear and convincing evidence. *Disciplinary Action Against Dvorak*, 2000 ND 98, ¶ 8, 611 N.W.2d 147. Although we give due weight to the findings, conclusions, and recommendations of the Disciplinary Board, we are not merely a rubber stamp, and we decide each proceeding upon its own facts. *Boughey*, at ¶ 8.

"When the hearing panel has heard the witnesses and observed their demeanor, we accord special deference to its findings on matters of conflicting evidence." *Disciplinary Bd. v. McDonald*, 2000 ND 87, ¶ 13, 609 N.W.2d 418. "We consider each disciplinary case upon its own facts to decide what discipline is warranted." *In re Disciplinary Action Against Dvorak*, 2000 ND 98, ¶ 8, 611 N.W.2d 147, *cert. denied*, —— U.S. ——, 121 S.Ct. 483, —— L.Ed.2d ——.

## III

[¶ 5] Disciplinary counsel objected to the hearing panel's recommendation of a 30–day suspension. Howe tendered a conditional admission in exchange for the recommended 30–day suspension, and, alternatively, raised a number of objections to the hearing panel's report.

### A

■ [¶ 6] Howe contends expert testimony should have been required to establish a violation of the Code of Professional Conduct. We agree with the hearing panel's resolution of this contention:

In this case the standard of care is set forth in the rules themselves. There is no issue as to what the standard of care is. There is no dispute as to the interpretation of the standard of care, nor is the standard that of what a reasonably competent attorney might do under the same or similar circumstances.

[¶ 7] Under N.D.R. Lawyer Discipl. 3.5(B), the North Dakota Rules of Evidence apply in disciplinary proceedings "insofar as appropriate." Rule 702, N.D.R.E, provides an expert witness may testify if "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Here, Howe was alleged to have knowingly made false statements and engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation. Expert testimony would not have assisted the hearing panel in determining if Howe made statements he knew to be false or if he engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation. We conclude expert testimony was unnecessary in this case.

### B

■ [¶ 8] Howe contends the hearing panel's finding he had all annuity information before George Schreiber's death is not supported by clear and convincing evidence. The hearing panel found in part:

Howe testified that the COVA policy was never found. Regardless, in a letter from COVA dated May 22, 1995, Howe was advised that the nieces were contingent beneficiaries. On October 8, 1995 George Schreiber passed away, his trust unfunded.

Howe contends, and disciplinary counsel agrees, the COVA letter was dated May 22, 1996. Howe asserts "it is important that this be corrected because ... there is an impression that Howe had significant knowledge regarding the COVA policy long before George Schreiber's death." However, the significance of the COVA letter of May 22, 1996, is the fact that it advised Howe that Schreiber's nieces were contingent beneficiaries before Howe met with two of them and made false statements to them on June 24, 1996.

### C

■ [¶ 9] Howe contends he did not discuss the Pioneer Mutual Policy with the nieces, and, "therefore made no statements to them which could be construed to be misleading, deceiving, or deceitful." We agree with the hearing panel's finding Howe made statements to the nieces he knew to be false, and we agree that Howe's conduct in failing to inform the nieces they were contingent beneficiaries involved dishonesty, fraud, deceit, or misrepresentation.

[¶ 10] The hearing panel found:

On June 24, 1996, Howe met with Caroline and Rose Renner. The purpose of the meeting was to have Caroline and Rose sign disclaimers to the COVA annuity. All three nieces testified at the hearing. The Hearing Panel finds their testimony to be consistent and credible.... Howe did not advise the nieces of their contingent beneficiary status under the Pioneer policy.... Howe told the nieces that if they did not disclaim, the proceeds they received from the COVA annuity would be deducted from their specific bequest under the trust. They testified that Howe told them they

would get more if they disclaimed than they would if they didn't. . . . The nieces testified that Howe told them that each would be responsible for $9,700.00 in estate administration fees. . . . . Each of the statements by Howe was false. The hearing panel concludes that at the time Howe made the statements, he knew that the statements were false. The Hearing Panel finds by clear and convincing evidence, that Howe engaged in conduct involving dishonesty, fraud, deceit and misrepresentation.

The nieces' testimony, if believed, established that Howe made the statements. The hearing panel specifically found the nieces' testimony was credible, the statements were false, and Howe did not inform the nieces of their contingent beneficiary status under the Pioneer policy. Howe's knowledge the statements were false when he made them is a permissible inference to be drawn from the evidence. The hearing panel heard the witnesses and observed their demeanor. Giving due weight to the hearing panel's findings, we conclude clear and convincing evidence supports the finding that Howe engaged in conduct involving dishonesty, fraud, deceit and misrepresentation.

### D

[¶ 11] Howe contends his conduct was not motivated with selfish or personal reasoning, and "[i]n fact, Howe's motivations in this case were to attempt, as best he could, to carry out what he believed the intentions of George Schreiber were." We consider these matters, as well as Howe's absence of a prior disciplinary record, and his previously good reputation, to be mitigating factors under N.D. Stds. Imposing Lawyer Sanctions 9.3.

### E

[¶ 12] Howe contends disciplinary counsel's view that the length of the hearing panel's recommended suspension of thirty days is not long enough "should be considered irrelevant" and *"Disciplin-*

*ary Counsel should not supplant his judgment for that of the Panel."* While the length of a suspension is a decision for this Court to make, we welcome disciplinary counsel's views in making that determination.

[¶ 13] Howe contends a reprimand is a sufficient sanction, and he should not be suspended from the practice of law. He argues:

He attempted to act in a fashion which he believed would best carry out the intentions of his client, that is, George Schreiber.

In the final analysis, Howe was unable to effectuate what he believed George Schreiber's wishes to be. The nieces received everything they were entitled to receive. The charities received everything they were entitled to receive according to the documents as they existed at the time of George Schreiber's death. Thus, although Howe's attempts to have the nieces disclaim the COVA policy ultimately generated litigation, in the final analysis no one was necessarily harmed. Given this, a 30 day suspension for this conduct is severe. It is in fact, not warranted.

[¶ 14] We do not agree a reprimand is appropriate in this case. Standard 5.1, N.D. Stds. Imposing Lawyer Sanctions, provides, in part:

*5.1 Failure to Maintain Personal Integrity.* Absent aggravating or mitigating circumstances upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving commission of an act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects, or in cases with conduct involving dishonesty, fraud, deceit, or misrepresentation:

5.11 Disbarment is generally appropriate when:

(a) a lawyer engages in serious conduct a necessary element of which includes intentional interference with

the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses; or

(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.

5.12 Suspension is generally appropriate when a lawyer knowingly engages in conduct which does not contain the elements listed in Standard 5.11 but that seriously adversely reflects on the lawyer's fitness to practice.

5.13 Reprimand is generally appropriate when a lawyer knowingly engages in any other conduct that involves dishonesty, fraud, deceit, or misrepresentation and that adversely reflects on the lawyer's fitness to practice.

■ [¶ 15] Generally, a lawyer's "conduct involving dishonesty, fraud, deceit, or misrepresentation," N.D. Stds. Imposing Lawyer Sanctions 5.1, "seriously adversely reflects on the lawyer's fitness to practice," *id.*, 5.12, and "tends to bring reproach upon the legal profession," N.D.C.C. § 27–14–02(7). Conduct like Howe's generally results in suspension. *See, e.g., Disciplinary Bd. v. McDonald,* 2000 ND 87, 609 N.W.2d 418; *Disciplinary Bd. v. Schultz,* 1997 ND 117, 564 N.W.2d 307; *Disciplinary Bd. v. Lamont,* 1997 ND 63, 561 N.W.2d 650; *Disciplinary Bd. v. Ellis,* 504 N.W.2d 559 (N.D.1993); *Disciplinary Bd. v. Kaiser,* 484 N.W.2d 102 (N.D.1992). *But see, Disciplinary Bd. v. Bailey,* 527 N.W.2d 274 (N.D.1995) (disbarment for repeated violations and previous disciplinary history); *Disciplinary Bd. v. Kinsey,* 524 N.W.2d 89 (N.D.1994) (resignation allowed); *Disciplinary Bd. v. Bailey,* 472 N.W.2d 472 (N.D.1991) (public reprimand). Howe's conduct undercut the public's con-fidence in lawyers. Upon considering Howe's absence of a prior disciplinary record and the absence of a selfish motive for his conduct as mitigating factors, we conclude a six-month suspension is appropriate.

## F

■ [¶ 16] On May 10, 2000, disciplinary counsel executed an affidavit of costs and expenses in the amount of $10,566.65, of which $6,157.50 was for 82.1 hours of attorney time at $75 per hour. In its July 2000 order, the hearing panel recommended "Howe be ordered to pay disciplinary counsel's costs, disbursements, and attorney's fees." Howe contends a disciplined attorney should not "have to pay for needless work conducted by Disciplinary Counsel. This is occurring in this case, and Counsel's time should be cut."

[¶ 17] "Unless otherwise ordered by this Court or the Disciplinary Board, our disciplinary rules require assessment of costs and expenses against a disciplined attorney." *Disciplinary Bd. v. Boughey,* 1999 ND 205, ¶ 13, 602 N.W.2d 268. "Costs and expenses assessed under N.D.R. Lawyer Discipl. 1.3(D) ordinarily include reasonable attorney fees for disciplinary counsel." *Id.* We have reviewed disciplinary counsel's affidavit in light of Howe's arguments, and, while not all of disciplinary counsel's efforts led to findings of violations, we find the costs, expenses, and fees sought in this case are reasonable.

## IV

[¶ 18] We order Howe suspended from the practice of law for six months, commencing March 1, 2001, and we order him to pay $10,566.65 for the costs and expenses of the disciplinary proceedings.

[¶ 19] WILLIAM A. NEUMANN, DALE V. SANDSTROM, CAROL RONNING KAPSNER, JJ., concur.

MARING, Justice, concurring in part and dissenting in part.

[¶ 20] I agree with the majority that there is clear and convincing evidence Howe engaged in conduct involving dishonesty, fraud, deceit, and misrepresentation. I also agree a reprimand is not appropriate in this case and that a suspension is the appropriate sanction. I, however, do not agree a six-month suspension is appropriate.

[¶ 21] In *Disciplinary Board. v. Schultz*, 1997 ND 117, 564 N.W.2d 307, 308, Charles Schultz admitted he violated Rule 5.5, N.D.R. Prof. Conduct, by practicing without a license and Rule 1.2(A)(3), N.D.R. Lawyer Discipl. (dishonest conduct) by holding himself out to his employer as a licensed attorney in the state of North Dakota. We suspended Schultz for 90 days. *Id.*

[¶ 22] In *Disciplinary Board. v. Lamont*, 1997 ND 63, ¶¶ 1, 16, 561 N.W.2d 650, Lamont was suspended for 60 days for violating Rule 3.3, N.D.R. Prof. Conduct (candor to the tribunal); Rule 1.2(A)(3), N.D.R. Lawyer Discipl. (dishonesty, fraud, deceit, or misrepresentation); and N.D.C.C. § 27–13–01(1) (respect for the court). We considered as mitigating circumstances that Lamont's testimony did not benefit him personally, that he had a good reputation, and that he had an unblemished disciplinary record. *Id.* at ¶ 20.

[¶ 23] In this case there are significant mitigating circumstances. Howe graduated from law school in 1958 and has had a clear disciplinary record for forty years. He is well respected in his community. In addition, Howe was not motivated by self gain, but rather attempted to carry out George Schreiber's testamentary intent as he saw it. Finally, his conduct did not result in any adverse consequences to these third persons.

[¶ 24] I conclude these mitigating circumstances justify the imposition of a three-month suspension.

[¶ 25] GERALD W. VANDE WALLE, C.J., concurs.