2000 ND 98

**In the Matter of the Application for DISCIPLINARY ACTION AGAINST Shirley A. DVORAK, a Member of the Bar of the State of North Dakota**

No. 990384.

Supreme Court of North Dakota.

May 18, 2000.

Order Staying Suspension July 13, 2000.

Paul W. Jacobson, Disciplinary Counsel, Bismarck.

Kermit E. Bye (argued) and Tami L. Norgard, Vogel, Weir, Bye, Hunke & McCormick, Ltd., Fargo, for Shirley A. Dvorak.

PER CURIAM.

[¶ 1] Disciplinary Counsel objects to the Disciplinary Board's dismissal of a formal complaint against Shirley A. Dvorak. We reverse the decision of the Disciplinary Board. Exercising our inherent power to discipline lawyers, we suspend Dvorak from the practice of law for a period of one year.

I.

[¶ 2] In 1997 and 1998, Dvorak represented Weston Berg in a divorce action against his wife, Brenda Berg, part of which involved an extensive and bitter child custody dispute. The trial court ap-

pointed a guardian ad litem, Carma Christensen, who then asked each of the parties for the names of persons who could provide helpful information about the children's circumstances. Brenda gave Christensen the name of her cousin, Deb Jacobs. Christensen sent Jacobs a questionnaire, to which Jacobs responded, using her computer at work to type her responses. Dvorak obtained a copy of Jacobs' responses to the questionnaire and, when Dvorak deposed Jacobs on February 5, 1998, she asked Jacobs numerous questions pertaining to the responses. During the deposition, it became clear some of Jacobs' answers were not based on personal knowledge, but on statements Brenda made to her in the past. Further, some of the information in Jacobs' responses was inaccurate.

[¶ 3] On February 28, 1998, Dvorak sent Jacobs a letter in which she claimed Jacobs had defamed Weston by making false and malicious statements. The letter was sent "PURSUANT TO NDCC 32–43–01 THROUGH 10," which contain the legal requirements for maintaining a defamation action in this state. Dvorak attached a copy of Jacobs' responses to the questionnaire, on which she had redacted statements "acceptable" to Weston, and indicated all other statements were to be corrected. Dvorak further stated, if Jacobs failed to correct those statements, Weston would "pursue all remedies available to him."

[¶ 4] On March 12, 1998, Dvorak sent a letter to Jacobs' employer, the North Dakota Department of Human Services ("DHS"). In that letter, Dvorak stated Jacobs had stored documents relevant to the Berg divorce action on her computer at work and that she wished to secure all writings relevant to the pending case. Further, Dvorak stated Jacobs had admitted in her deposition that the information

contained in these documents was "untrue." In another sentence, Dvorak again referred to the materials as "untrue documents."

[¶ 5] Jacobs, with the help of an attorney she contacted after receiving Dvorak's letter, filed a complaint with the Disciplinary Board. A hearing was held on June 29, 1999, at which Disciplinary Counsel contended Dvorak's letter to Jacobs violated N.D.R. Prof. Conduct 3.4 and that her letter to DHS violated N.D.R. Prof. Conduct 4.4. The hearing body determined the violations had not been proven by clear and convincing evidence and recommended the petition for discipline be dismissed. The Disciplinary Board adopted the hearing body's recommendation on November 22, 1999.

## II.

[¶ 6] As an initial matter, Dvorak notes that the Disciplinary Board filed no report of its findings and recommendations under N.D.R. Lawyer Discipl. 3.1(G) (1999). Dvorak contends, in the absence of such a report, this Court's jurisdiction was not invoked by Disciplinary Counsel's objection to the Disciplinary Board's dismissal of the petition for discipline. We need not address her argument because we conclude this case calls for the exercise of our inherent disciplinary power.

[¶ 7] We have recognized that our Court has a "duty to maintain the integrity of the legal profession by disciplining lawyers." *Matter of Disciplinary Action Against Anseth*, 1997 ND 66, ¶ 18, 562 N.W.2d 385. Thus, we have reserved authority under N.D.R. Lawyer Discipl. 3.1(H) (1999) to institute disciplinary proceedings on our own initiative. We conclude the circumstances presented by this case are serious enough to warrant the exercise of this inherent authority.[1]

---

1. We note, though it is not applicable to this appeal, N.D.R. Lawyer Discpl. 3.1(F)(1), effective July 1, 1999, now provides a mechanism for our review of an order of dismissal by the Disciplinary Board, which may be appealed by Disciplinary Counsel, the complainant, or the lawyer.

## III.

[¶ 8] On appeal, this Court reviews disciplinary proceedings de novo on the record. *Disciplinary Bd. v. Leier,* 1997 ND 79, ¶ 3, 562 N.W.2d 741. Disciplinary counsel must prove each alleged violation of the disciplinary rules by clear and convincing evidence. *Disciplinary Bd. v. Dooley,* 1999 ND 184, ¶ 28, 599 N.W.2d 619. We consider each disciplinary case upon its own facts to decide what discipline is warranted. *Leier,* at ¶ 3.

### A.

[¶ 9] Disciplinary Counsel contends Dvorak's letter to Jacobs violated N.D.R. Prof. Conduct 3.4(a), in that it was an attempt to "unlawfully obstruct another party's access to evidence." He asserts Jacobs' responses to Christensen's questionnaire were privileged, and so could not have served as the basis for a defamation suit. Thus, he argues Dvorak's threat was an unlawful attempt to intimidate Jacobs into changing her responses. We agree.

[¶ 10] There can be no liability for defamatory statements that are privileged. *Soentgen v. Quain & Ramstad Clinic, P.C.,* 467 N.W.2d 73, 78 (N.D.1991). "Privilege is based on the sound public policy that some communications are so socially important that the full and unrestricted exchange of information requires some latitude for mistake." *Id.* Under N.D.C.C. § 14-02-05(2), a communication is privileged when it is made "[i]n any legislative or judicial proceeding or in any other proceeding authorized by law." Such a statement is protected by absolute privilege; thus, even if the statement was made with actual malice, the speaker is protected from liability. *Rykowsky v. Dickinson Pub. Sch. Dist. No. 1,* 508 N.W.2d 348, 351 (N.D.1993).

[¶ 11] Answers given in response to a guardian ad litem's questionnaire are statements made in a judicial proceeding. Guardian ad litem appointments and custodial investigations and reports are initiated by court order. *See* N.D.C.C. §§ 14-09-06.4 and 14-09-06.3. Under N.D.C.C. § 14-09-06.3(2), a guardian ad litem investigating a child's circumstances "may consult any person who may have information about the child...." Even after a guardian ad litem completes her report and presents it to the trial court, she may be called as a witness and cross-examined regarding her findings and recommendation. N.D.C.C. § 14-09-06.3(3); *Green v. Green,* 1999 ND 86, ¶ 9, 593 N.W.2d 398. Thus, Christensen performed her duties as a guardian ad litem under the authority of the judicial system, and responses to her questionnaire were protected by absolute privilege.

[¶ 12] If "all persons are presumed to know the law," *Tooley v. Alm,* 515 N.W.2d 137, 141 (N.D.1994), then certainly Dvorak, as a seasoned attorney, knew or should have known of the legal principles explained above. Despite that, Dvorak sent a letter to Jacobs threatening a defamation lawsuit based on privileged communications. Under N.D.C.C. § 32-43-03(1), Dvorak's letter was a predicate requirement to maintaining that action; it served no other purpose.

[¶ 13] Dvorak argues her conduct did not violate Rule 3.4 because it did not obstruct Brenda's access to Jacobs as a witness; Brenda was still free to call Jacobs at trial. Dvorak misunderstands the rule. A lawyer violates Rule 3.4 not only when she denies access to a witness completely, but also when she unlawfully attempts to dissuade a witness from providing particular information to the court. Dvorak's letter requesting that Jacobs "correct" her privileged statements was just such an attempt. Jacobs testified at the disciplinary hearing that when she received the letter she feared she would be sued and her first thought was to protect herself and her family. Initially, Jacobs believed she should change the answers she provided on the questionnaire. Jacobs retained an attorney, who advised her not to change her responses, but to file a disciplinary complaint instead. It is irrelevant that Dvorak's attempt to intimidate Jacobs into changing her responses failed;

the attempt itself violated the rule. We find Disciplinary Counsel has proven by clear and convincing evidence that Dvorak violated Rule 3.4 when she threatened Jacobs with a defamation action based on Jacobs' privileged statements.

## B.

[¶ 14] Disciplinary Counsel next argues Dvorak's letter to Jacobs' employer violated N.D.R. Prof. Conduct 4.4. The hearing body found Disciplinary Counsel had not proven by clear and convincing evidence that the letter had no purpose other than Jacobs' embarrassment. We agree that the letter served a purpose other than to embarrass Jacobs. Dvorak's letter sought preservation of any documents relevant to the divorce and also requested that these documents be removed from the public domain, both of which are legitimate purposes. However, we conclude Dvorak's statement to Jacobs' employer that Jacobs admitted she provided false information was a separate and independent act which violated Rule 4.4.

[¶ 15] Rule 4.4 states that a "lawyer shall not use means that have no substantial purpose other than to embarrass or burden a third person...." The comment to that rule states:

> [r]esponsibility to a client requires a lawyer to subordinate the interests of others to those of the client, but that responsibility does not imply that a lawyer has no obligation to respect the rights of third persons.... [A] lawyer shall not ... act on a client's behalf only to harass or maliciously injure another....

[¶ 16] Blaine Nordwall, the director of DHS's Legal Advisory Unit, testified in a deposition which was admitted as an exhibit at the disciplinary hearing, that Dvorak's characterization of the documents as untrue made no difference in the manner in which the documents were handled following her request that they be preserved. Thus, Dvorak's statement did not serve the legitimate purposes of her letter. We conclude no substantial purpose existed for telling Jacobs' employer that Jacobs admitted making untrue statements other than to embarrass or burden Jacobs.

Therefore, we find Disciplinary Counsel has proven by clear and convincing evidence that Dvorak violated Rule 4.4.

## IV.

[¶ 17] In determining the appropriate sanction for a lawyer's misconduct, we consider: (1) the duty violated; (2) the lawyer's mental state; (3) the potential or actual injury caused by the lawyer's misconduct; and (4) the existence of aggravating or mitigating factors. N.D. Stds. Imposing Lawyer Sanctions 3.0. We conclude Dvorak's letter threatening Jacobs with a defamation action interfered with the administration of justice and, therefore, violated her duties to the legal system, implicating Standard 6.0, N.D. Stds. Imposing Lawyer Sanctions. In addition, we conclude her statement to Jacobs' employer that Jacobs admitted providing untrue information violated Dvorak's duties to the public, implicating Standard 5.0, N.D. Stds. Imposing Lawyer Sanctions.

[¶ 18] According to our standards, the possible sanctions for Dvorak's misconduct are:

> Standard 5.0 Violations of Duties Owed to the Public
>
> 5.1 Failure to Maintain Personal Integrity. Absent aggravating or mitigating circumstances upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving commission of an act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects, or in cases with conduct involving dishonesty, fraud, deceit, or misrepresentation:
>
> 5.11 Disbarment is generally appropriate when:
>
> (a) a lawyer engages in serious conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy

or solicitation of another to commit any of these offenses; or

(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.

5.12 Suspension is generally appropriate when a lawyer knowingly engages in conduct which does not contain the elements listed in Standard 5.11 but that seriously adversely reflects on the lawyer's fitness to practice.

5.13 Reprimand is generally appropriate when a lawyer knowingly engages in any other conduct that involves dishonesty, fraud, deceit, or misrepresentation and that adversely reflects on the lawyer's fitness to practice.

5.14 Admonition is generally appropriate when a lawyer engages in any other conduct that reflects adversely on the lawyer's fitness to practice law.

. . . .

Standard 6.0 Violations of Duties Owed to the Legal System

6.1 False Statements, Fraud, and Misrepresentation. Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving conduct that is prejudicial to the administration of justice or that involves dishonesty, fraud, deceit, or misrepresentation to a court:

6.11 Disbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material information, and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding.

6.12 Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.

6.13 Reprimand is generally appropriate when a lawyer is negligent either in determining whether statements or documents are false or in taking remedial action when material information is being withheld, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.

6.14 Admonition is generally appropriate when a lawyer engages in an isolated instance of neglect in determining whether submitted statements or documents are false or in failing to disclose material information upon learning of its falsity, and causes little or no actual or potential injury to a party, or causes little or no adverse or potentially adverse effect on the legal proceeding.

In general, disbarment and suspension are appropriate sanctions for intentional or knowing misconduct. *Anseth*, 1997 ND 66, ¶ 29, 562 N.W.2d 385. We find Dvorak's misconduct in this case was knowing. Her letter to Jacobs conditioned the threat of a lawsuit on Jacobs' correction of her responses to Christensen's questionnaire, which was a conscious attempt to bully Jacobs into changing her responses. Dvorak knew or should have known Jacobs' responses were privileged communications. Similarly, Dvorak knew or should have known the veracity of the information stored on Jacobs' computer at DHS would have no bearing on the treatment of her request that the documents be preserved. We find Dvorak's statements were intended only to embarrass Jacobs in her workplace.

[¶ 19] Next, we consider the potential or actual injury caused by Dvorak's misconduct. Though Dvorak's attempt to dissuade Jacobs from providing information to the guardian ad litem failed, the actual harm her letter caused was not insubstantial. Jacobs testified Dvorak's threat of a lawsuit frightened her and that she retained an attorney to defend her, at her personal expense. The potential harm of Dvorak's misconduct is also of great concern to this Court. Our system of justice

relies heavily on the willingness of our citizens to provide information; Dvorak's threat of a defamation action and her attempt to embarrass Jacobs are behaviors which erode the public's trust in our legal system, discourage citizens from coming forward, and prejudice the administration of justice.

[¶ 20] Finally, we consider relevant the existence of several aggravating factors, which we may consider in deciding the proper sanction for attorney misconduct and which may justify an increase in the degree of discipline we impose. N.D..Stds. Imposing Lawyer Sanctions 9.1, 9.21. Among these factors are Dvorak's substantial experience in the practice of law, her refusal to acknowledge the wrongful nature of her conduct, and that, in this instance, she has committed multiple offenses. *See* N.D. Stds. Imposing Lawyer Sanctions 9.22(i), (g) and (d). We find an additional aggravating factor, Dvorak's prior disciplinary record, of great concern. N.D. Stds. Imposing Lawyer Sanctions 9.22(a). Dvorak has been disciplined in four previous instances. She was reprimanded in 1989 and 1995, and was admonished in 1997. Further, Dvorak was suspended from the practice of law for 30 days in 1998, upon an application for reciprocal discipline following her suspension from the practice of law in Minnesota. *See Disciplinary Board v. Dvorak*, 1998 ND 134, 580 N.W.2d 586; *In re Disciplinary Action Against Dvorak*, 554 N.W.2d 399 (Minn.1996).

[¶ 21] We conclude Dvorak's misconduct warrants a suspension from the practice of law for a period of one year, commencing June 30, 2000. We recognize the length of the suspension is grave punishment; however, this Court's disciplinary orders are not "empty noise," but are intended to protect the public. *Disciplinary Bd. v. Larson*, 512 N.W.2d 454, 457 (N.D.1994). We conclude a lengthy suspension is necessary under the circumstances. This case marks Dvorak's fourth disciplinary sanction in five years. Less than two years ago, we imposed a 30–day suspension upon Dvorak. Before she may practice law again, Dvorak must apply for reinstatement in accordance with N.D.R. Lawyer

Discipl. 4.5. In addition, in order to be reinstated she must show successful completion of the Multistate Professional Responsibility Examination. *See Disciplinary Bd. v. McDonald*, 2000 ND 87, ¶ 41, 609 N.W.2d 418. Finally, we direct that Dvorak pay the costs of this disciplinary proceeding to be determined by the Disciplinary Board. *See Anseth*, 1997 ND 66, ¶ 31, 562 N.W.2d 385.

[¶ 22] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, WILLIAM A. NEUMANN, DALE V. SANDSTROM, JJ., and EVERETT NELS OLSON, D.J, concur.

[¶ 23] EVERETT NELS OLSON, D.J., sitting in place of KAPSNER, J., disqualified.

## ORDER FOR STAY

On May 18, 2000, this Court filed its opinion suspending Shirley A. Dvorak from the practice of law for a period of one year, commencing June 30, 2000. Ms. Dvorak filed a Petition for Rehearing which was denied by the Court on June 13, 2000.

On July 11, 2000, Ms. Dvorak filed a Motion for Stay Pending Appeal to the United States Supreme Court and Brief in Support of Motion, requesting a stay of her suspension for a reasonable time to allow her to apply for a Writ of Certiorari from the United States Supreme Court. The Court considered the matter, and

ORDERED, the Motion for Stay is GRANTED for a period of 30 days. If the Petition for Writ of Certiorari is filed within the 30-day period, and a copy of the petition is filed with the Clerk of the North Dakota Supreme Court, the stay will continue in effect until final disposition by the United States Supreme Court. If the Petition is not filed within the 30-day period, and a copy provided to the Clerk, the Stay expires in 30 days or August 12, 2000.