2001 ND 86

In The Matter of The Application For Disciplinary Action Against Henry H. HOWE, a Member of the Bar of the State of North Dakota.

Disciplinary Board of the Supreme Court of the State of North Dakota, Petitioner

v.

Henry H. Howe, Respondent.

No. 20000341.

Supreme Court of North Dakota.

May 3, 2001.

Paul W. Jacobson, Disciplinary Counsel, Bismarck, for petitioner.

Chad C. Nodland, Chad C. Nodland, P.C., Bismarck, for respondent.

PER CURIAM.

[¶ 1] Henry H. Howe filed objections to the report of the hearing panel before the Disciplinary Board, which concluded Howe violated N.D.R. Prof. Conduct 1.3, 1.4, and 3.2. We conclude there is clear and convincing evidence of Howe's violations, and we suspend him from the practice of law for 120 days and order him to pay costs in the amount of $4,953.39.

I

[¶ 2] Howe was admitted to practice law in North Dakota on July 27, 1973; he has remained a member of the Bar, except for a 90–day suspension in 1977. In December 1996, Deborah L. Johnson entered into a retainer agreement with Howe for legal services involving modification of her divorce judgment to increase child support, reallocation of past medical costs and insurance, and a set-off against an equity payment due her former husband following the sale of marital property awarded to Johnson. Howe initiated a motion; a hearing was held; and in February 1997, the court awarded Johnson $3,487 as reimbursement for insurance. Howe failed to reduce this award to judgment over the next two years, although Johnson contacted Howe in an effort to have him complete the matter.

[¶ 3] In January 1999, Johnson discussed with Howe her intention to refinance her home, and she requested Howe to reduce her $3,487 award to judgment. Howe promised to complete the matter in a timely manner so the loan refinancing could take place as scheduled. Johnson applied for refinancing, and her loan officer, Michael Benson, locked in an interest rate of 6–3/8 percent. Johnson and Benson discussed the money award owed to Johnson from her former husband, and Johnson informed Benson that Howe was working on that matter. Benson called Howe, while Johnson was in his office, and explained what they needed Howe to do and that the loan rate was locked in through March 23, 1999. Howe assured Benson the matter would be resolved no later than the end of February. In a letter to Johnson, dated February 26, 1999, Howe confirmed that he had spoken with the judge and would submit a judgment form to the court. The day before

the expiration of the interest rate lock-in date, Howe faxed two letters to the abstract company and suggested closing the loan without the post-divorce matters completed. However, nothing was resolved before the March 23rd deadline when the 6–3/8 percent interest rate expired. Subsequently, Johnson hired another attorney who secured an order for judgment for the post-divorce award on April 30, 1999. Johnson then sought refinancing in June or July of 1999, but by that time the interest rate had increased to 7–1/2 percent. The difference in the interest payments over the 15–year loan was $5,670; Johnson also incurred an additional appraisal fee of $75.

[¶ 4] When Johnson retained Howe, she paid him $200 and paid an additional $500 through March 1997. The retainer agreement stated Howe's law firm would send "itemized bills from time to time." The only bill Johnson ever received was dated February 14, 1999, more than two years after Johnson hired Howe as her attorney. When Johnson came to Howe's office to talk about the bill, Howe made no mention of fees needing to be paid at that time.

[¶ 5] A Petition for Discipline was served on Howe in November 1999. The matter was heard by a hearing panel of the Disciplinary Board. The panel concluded Howe violated Rule 1.3, N.D.R. Prof. Conduct, for failing to diligently and promptly reduce to judgment Johnson's $3,487 post-divorce award; Rule 1.4, N.D.R. Prof. Conduct, for failing to make reasonable efforts to keep Johnson reasonably informed about the status of the matter and for failing to communicate the costs of his representation; and Rule 3.2, N.D.R. Prof. Conduct, for failing to reasonably expedite reduction of the $3,487 award to judgment. The panel also concluded Howe's misconduct was aggravated by his prior disciplinary history and further aggravated by similar misconduct for which he was previously disciplined in 1998, 1995, and 1991. The panel recommended suspending Howe from the practice of law for 60 days and requiring Howe to pay costs of $4,010.24, plus costs of the transcript of the hearing. Howe filed objections to the panel's recommendations, and disciplinary counsel filed a supplemental affidavit of costs and expenses listing the amount of $943.15 for the hearing transcript expense.

II

[¶ 6] We review disciplinary proceedings de novo on the record. *In re Disciplinary Action Against Keller*, 2000 ND 221, ¶ 8, 620 N.W.2d 156. In the context of disciplinary proceedings, de novo means we accord due weight to the findings, conclusions, and recommendations of the hearing panel, but we do not act as a mere "rubber stamp." *Id.* Because the hearing panel has heard the witnesses and observed their demeanor, we give special deference to its findings on matters of conflicting evidence, and we consider each disciplinary case on its own facts to decide what discipline is warranted. *In re Disciplinary Action Against McDonald*, 2000 ND 87, ¶ 13, 609 N.W.2d 418. Disciplinary counsel must prove each alleged violation of the disciplinary rules by clear and convincing evidence. N.D.R. Lawyer Discipl. 3.5(C),(D); *see also In re Disciplinary Action Against Dvorak*, 2000 ND 98, ¶ 8, 611 N.W.2d 147.

III

[¶ 7] Howe raises several objections to the hearing panel's findings and conclusions. Howe insists he "did everything he could" to represent Johnson and to keep her apprised of the case status. We are

unpersuaded by Howe's arguments supporting each of his objections.

## A

[¶ 8] Howe argues the hearing panel findings, contained in Paragraphs 3, 4, 5, and 6 of their report, fail to accurately and completely set out the factual record of the case, as presented at the hearing and through argument. Howe also contends the factual basis presented at the hearing fails to meet the required burden of proof in establishing his misconduct by clear and convincing evidence.

[¶ 9] Paragraphs 3, 4, 5, and 6 in the report of the hearing panel state:

3. How[e] initiated a motion with the court in Grand Forks County. A hearing was held on February 20, 1997, at which Howe appeared with Johnson and her ex-husband appeared with his attorney. On February 24, 1997, the court issued a memorandum decision. Part of the memorandum found that Johnson would be awarded a money judgment against her ex-husband in the amount of $3,487, as reimbursement for supplemental insurance. The award of the $3,487 to Johnson was not reduced to judgment by Howe. Johnson attempted to contact Howe over the next two years in an effort to complete the matter.

4. In January, 1999, Johnson contacted [Howe] in regard to refinancing the home. [Howe] promised to complete the matter concerning the award of the $3,487 and the other issues in a timely manner so that the loan refinancing could take place at the scheduled time in March, 1999. [Howe] did not do so. As a result, Johnson incurred an additional $5,670 in interest costs over the life of the fifteen year loan and an additional $75 in appraisal fee.

5. Howe failed to diligently expedite reduction to judgment of the $3,487 awarded to Johnson in the February 24, 1997, memorandum decision of the court. That lack of diligence occurred between January 1998 and March 23, 1999. The lack of diligence and failure to expedite the litigation was particularly evident between January, 1999, and March 23, 1999. During that time, Howe gave assurance to Johnson that the award from the memorandum decision could be reduced to judgment and the matter resolved so that Johnson could obtain refinancing for her home by the closing date of March 23, 1999. However, Howe failed to diligently work on the matter, as he had promised.

6. Howe failed to make reasonable efforts to keep his client reasonably informed about the status of the matter between January 1998, and March 23, 1999. The lack of communication was particularly evident between January, 1999, and March 23, 1999. During that time Howe gave assurance to Johnson that the award from the memorandum decision could be reduced to judgment and the matter resolved so that Johnson could obtain refinancing for her home. However, Howe failed to communicate to his client that he was not diligently working on the matter, as he had promised. The lack of communication is also reflected by Howe's failure to communicate the costs of his representation, in that he did not present a bill for legal services to Johnson until February 14, 1999.

[¶ 10] Howe claims these findings are erroneous, incomplete, inaccurate, unfair, and "leave[ ] a huge gap" in the evidence because the hearing panel does not address additional facts. Specifically, Johnson's former husband filed a motion to reconsider the trial court's award of $3,487, as it appeared to be in error since Johnson had testified the back insurance

amount she was entitled to was only $1,120. Howe was concerned about responding to the motion because Johnson could not support the $3,487 amount. Howe claims Johnson was "very ambivalent" about pursuing the matter because she could not justify the award, and Howe and Johnson "seemed to be in agreement that they should take no action." Howe alleges the $3,487 award was ineligible for reduction to judgment because it was not a final decision since there was a pending motion.

[¶ 11] In addition, the 1997 flood hit Grand Forks, inundating Howe's office, and one month later, Howe and his wife suffered injuries in a car accident. Johnson called Howe in December 1997 and indicated she was having problems with her daughter and "didn't want to do anything in court until the problems with her daughter were resolved." In November 1998, Johnson contacted Howe to get the process restarted as the problems with her daughter were resolved. Then in January 1999, when Johnson informed Howe about home refinancing and the interest lock-in date, Howe expressed concern to Johnson that she had only paid $700 and had not made any further payments. Howe told Johnson he would be willing to send a couple of letters regarding the home refinancing matter, but Howe could not take additional action without a financial commitment from Johnson. Howe received no further payments from Johnson, so Howe took no additional action to reduce the award to judgment.

[¶ 12] A review of the record indicates the trial court's memorandum decision granted a $3,487 award to Johnson, which Howe failed to reduce to judgment. The record reflects Johnson's attempts to have the matter completed, particularly after January 1999 when she was refinancing her home. Both Johnson and her banker testified that Howe assured them the matter would be taken care of in time to meet the interest rate lock-in deadline. Documentary evidence also includes Howe's letter to Johnson in which he assured Johnson he could reduce the award to judgment before the closing date for the home refinancing. The record shows that once Johnson secured another attorney, the award was reduced to judgment within a few weeks. We conclude the hearing panel properly made no findings regarding the flood and car accident, because these events were not relevant to Howe's failure to reduce the award to judgment almost two years later, after repeated requests by Johnson to revolve the matter. Despite Howe's protestations that he "did about all he could to keep Johnson apprised of the case status," the hearing panel found Howe did not do the work he promised, and the only bill Johnson ever received from Howe was sent more than two years after Johnson retained Howe. *See In re Disciplinary Action Against McDonald*, 2000 ND 87, ¶ 13, 609 N.W.2d 418 (deferring to the hearing panel's findings on matters of conflicting evidence and considering each disciplinary case on its own facts to decide what discipline is warranted).

[¶ 13] We conclude the hearing panel's findings are complete, discussing relevant facts which support Howe's misconduct by clear and convincing evidence.

B

[¶ 14] Howe asserts the hearing panel clearly erred in concluding he violated Rules 1.3, 1.4, and 3.2, N.D.R. Prof. Conduct, based on the panel's erroneous findings. Howe suggests perhaps his representation of Johnson was "imperfect," but how his conduct "can be an ethics violation is a mystery." We conclude there is nothing mysterious in the hearing

panel's conclusions, based on clear and convincing evidence, that Howe violated the North Dakota Rules of Professional Conduct.

## 1

[¶ 15] Rule 1.3, N.D.R. Prof. Conduct, provides: "A lawyer shall act with reasonable diligence and promptness in representing a client." The comment to Rule 1.3 directs lawyers to "act with commitment and dedication to the interests of the client" and to "carry through to conclusion all matters undertaken for a client." N.D.R. Prof. Conduct 1.3 cmt. The comment offers a cogent explanation for this rule: "Perhaps no professional shortcoming is more widely resented than procrastination. A client's interests often can be adversely affected by the passage of time or the change of conditions. . . ." *Id.; see also In re Disciplinary Action Against Seaworth,* 1999 ND 229, ¶ 25, 603 N.W.2d 176 (citing the rationale underlying Rule 1.3, N.D.R. Prof. Conduct).

[¶ 16] The hearing panel's findings detail clear and convincing evidence of Johnson's attempts to have Howe reduce to judgment her favorable award for supplemental medical insurance; the passage of over two years without Howe fulfilling his duty to carry this matter through to conclusion; and the adverse effects of Howe's procrastination in the form of increased refinancing interest rates and additional appraisal fees incurred by Johnson. *See Seaworth,* 1999 ND 229, ¶¶ 26, 29, 603 N.W.2d 176 (concluding an attorney lacked reasonable diligence in representing a client when the attorney failed to respond to at least 13 letters regarding the client's claim, so the claim remained unresolved for years).

[¶ 17] We conclude Howe was neither reasonably diligent nor prompt in reducing Johnson's $3,487 award to judgment.

## 2

[¶ 18] Rule 1.4, N.D.R. Prof. Conduct, governs attorney communications with the client:

(a) A lawyer shall make reasonable efforts to keep a client reasonably informed about the status of a matter. A lawyer shall promptly comply with a client's reasonable requests for information.

(b) A lawyer shall explain matters related to the representation to the extent reasonably necessary to permit the client to make informed decisions.

The guiding principle of Rule 1.4 regarding attorney communications with the client is that the attorney "should fulfill reasonable client expectations for information." N.D.R. Prof. Conduct 1.4 cmt.

[¶ 19] The hearing panel's findings demonstrate by clear and convincing evidence Howe's failure to explain to Johnson that he was not following through with his assurances of reducing the award to judgment. Howe did not fulfill his duty to communicate to Johnson, so she was unable to make an informed decision to timely secure another attorney to complete this matter before the interest rate lock-in expired. Moreover, Howe's own retainer agreement to provide legal services to Johnson stated his law firm would send "itemized bills from time to time." Nevertheless, the record shows Howe did not send Johnson a bill for more than two years, yet he then used her lack of payment as an excuse not to continue his representation of Johnson. *See In re Disciplinary Action Against Anseth,* 1997 ND 66, ¶¶ 10, 25, 562 N.W.2d 385 (determining an attorney violated Rule 1.4, N.D.R. Prof. Conduct, by failing to file a corrected order and by failing to inform his client about the incomplete status of the case).

[¶ 20] We conclude Howe did not make reasonable efforts to keep Johnson reasonably informed about the status of reducing her award to judgment or about billing information, nor did Howe explain these matters to the extent reasonably necessary to permit Johnson to make informed decisions.

3

[¶ 21] Rule 3.2, N.D.R. Prof. Conduct, provides: "A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client." Litigants should have their disputes promptly resolved, as "[d]ilatory practices bring the administration of justice into disrepute." N.D.R. Prof. Conduct 3.2 cmt.

[¶ 22] Howe's failure to reduce a favorable monetary award to judgment for two years, during which time Johnson requested his assistance in resolving this matter, demonstrates that Howe did not make reasonable efforts to expedite the litigation consistent with the interests of his client. When Johnson decided to refinance her home in January 1999, Howe promised both Johnson and her banker that the matter would be resolved in time for Johnson to avail herself of the locked-in interest rate. However, Howe did not get the work done and then sent two faxes to the abstract company the day before the deadline, suggesting the loan be closed despite his failure to complete the post-divorce matter.

[¶ 23] We conclude the record is replete with clear and convincing evidence of Howe's dilatory practices and lack of reasonable efforts to expedite the litigation by refusing to bring to resolution the legal matter Johnson retained him to complete.

C

[¶ 24] Howe claims the hearing panel erred by not reciting the applicable standard of proof to reach the conclusion that his conduct violated the North Dakota Rules of Professional Conduct.

[¶ 25] The applicable standard of proof for evidence of misconduct in disciplinary proceedings has been consistently enunciated in our case law, as expressly established in Rule 3.5, N.D.R. Lawyer Discipl. The applicable subsections of Rule 3.5 provide:

(C) *Standard of Proof.* Disposition of formal charges of misconduct . . . must be supported by clear and convincing evidence.

(D) *Burden of Proof.* [Disciplinary] [c]ounsel has the burden of proof in proceedings seeking discipline. . . . The lawyer has the burden of proof in proceedings seeking reinstatement. . . .

We review disciplinary proceedings against attorneys de novo on the record under a clear and convincing standard of proof. *In re Disciplinary Action Against Dooley,* 1999 ND 184, ¶ 12, 599 N.W.2d 619.

[¶ 26] We conclude the hearing panel did not err in failing to recite the burden of proof for Howe's disciplinary proceedings; the applicable standard is frequently specified in case law and plainly stated in Rule 3.5(C),(D), N.D.R. Lawyer Discipl.

D

[¶ 27] Howe argues the hearing panel erred in determining aggravating factors without determining the specific basis for application of each factor. Howe challenges the panel's lack of explanation for aggravation of his misconduct and lack of explanation of why his prior 1977 and 1988 disciplinary sanctions were relevant.

[¶ 28] Aggravating circumstances in disciplinary proceedings are defined as "any considerations or factors that may justify an increase in the degree of disci-

pline to be imposed." N.D. Stds. Imposing Lawyer Sanctions 9.21. The following factors may be considered in aggravation: prior disciplinary offenses, a pattern of misconduct, and multiple offenses. N.D. Stds. Imposing Lawyer Sanctions 9.22. Furthermore, when there has been prior discipline, N.D. Stds. Imposing Lawyer Sanctions 8.2 provides:

> Suspension is generally appropriate when a lawyer has been reprimanded for the same or similar misconduct and engages in further similar acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.

■ [¶ 29] The panel received evidence of five prior disciplines for Howe's misconduct, spanning from 1977 to 1998, with the most recent three occurrences all including lack of diligence or lack of communication:

> Private Reprimand . . . on November 13, 1991 . . . for violation of Rule 1.3, [N.D.R. Prof. Conduct], for failing to proceed with reasonable diligence and promptness in regard to discovery.
> Admonition . . . on June 30, 1995 . . . for violation of Rule[s] 1.1 and 1.3, [N.D.R. Prof. Conduct], for failing to diligently pursue the client's case and failing to comply with the Federal Tort Claims Act.
> Admonition . . . on April 8, 1998 . . . for violation of Rule 1.4, [N.D.R. Prof. Conduct], for failing to communicate with his client.

Because of the similarity in these incidents of misconduct, they were appropriately considered by the hearing panel as aggravating factors. We also conclude the older disciplinary actions against Howe in 1977 and 1988 were relevant in establishing a pattern of misconduct by Howe. *See In re Disciplinary Action Against Dvorak*, 2000 ND 98, ¶ 20, 611 N.W.2d 147 (considering as relevant aggravating circumstances four prior disciplinary actions, dating from 1989 to 1998, as well as multiple offenses in the current proceeding).

[¶ 30] We conclude the hearing panel did not err in considering Howe's entire record of disciplinary sanctions as aggravating circumstances relevant to his current misconduct.

E

■ [¶ 31] Howe contends the hearing panel erred in failing to consider, determine, and recite mitigating factors, such as his lack of a dishonest or selfish motive and evidence of personal or emotional problems caused by the flood and the car accident. Howe argues the delay between the time of all these circumstances and the disciplinary action has disadvantaged him because the witnesses would have had a better recollection of the facts. Finally, Howe asserts the hearing panel should have considered that his prior disciplinary sanctions in 1977 and 1988 were far apart and relatively remote in time.

[¶ 32] Mitigating circumstances are any considerations or factors which may justify a reduction in the degree of discipline imposed. N.D. Stds. Imposing Lawyer Sanctions 9.31. Mitigating factors may include: absence of a dishonest or selfish motive; personal or emotional problems; character or reputation; delay in disciplinary process which is prejudicial to the respondent; interim rehabilitation; imposition of other penalties or sanctions; and remoteness of prior offenses. N.D. Stds. Imposing Lawyer Sanctions 9.32.

[¶ 33] Despite Howe's assurances to Johnson and her banker that he would reduce the award to judgment by the closing deadline, by his own admission Howe "never took action" because Johnson "never paid the bill." Thus, we con-

clude Howe's misconduct is not mitigated by an absence of selfish motive; clearly, Howe placed his financial interests over the interests of his client despite his verbal and written assurances he would complete the matter. Nor is Howe's misconduct mitigated by personal or emotional problems related to the flood and car accident, because these events occurred in the spring of 1997. The hearing panel found Howe's lack of diligence occurred from January 1998 until March 1999. Howe's argument that his character or reputation should be considered as mitigating factors also fails, as Howe's prior five disciplinary sanctions demonstrate a reputation punctuated by misconduct. In addition, Howe has failed to show any prejudice from any delay in this disciplinary process and failed to establish he has rehabilitated himself. Finally, in light of Howe's disciplinary history involving continuous incidents of misconduct, the 1977 and 1988 disciplinary proceedings are not remote but highly relevant to establishing a pattern of misconduct. *See In re Disciplinary Action Against Rau*, 533 N.W.2d 691, 694 (N.D.1995) (warning that mitigating factors do not justify or excuse the attorney's misconduct, nor shield the attorney from professional responsibility; rather, they are considered merely as explanations of the lawyer's conduct in order to temper the imposed sanction).

### F

■ [¶ 34] Howe's final objection is to the hearing panel's recommendation that he pay costs in the amount of $4,010.24. Howe insists the hearing panel clearly erred in arbitrarily setting attorney fees at $75 per hour, as that figure has no statutory basis and is not supported by any finding or conclusion of the panel. Howe objected to disciplinary counsel's affidavit of costs and expenses, arguing the judiciary was usurping executive and legislative power by imposing fees in attorney disciplinary proceedings without a legislative enactment. Howe claimed that disciplinary counsel was "unjustly enrich[ing] himself through the disciplinary process," and that imposing mandatory costs and billing attorney fees at $75 per hour "amounts [to] nothing less tha[n] a veritable 'Georgia Speed Trap' situated on the legal roadmap."

■ [¶ 35] Unless otherwise ordered by the court or hearing panel, costs and expenses of disciplinary proceedings must be assessed against the lawyer if discipline is imposed, including, but not limited to, costs of investigations, service of process, witness fees, and a court reporter's services. N.D.R. Lawyer Discipl. 1.3(D). We review the disciplinary counsel's affidavit of costs incurred to ensure such costs, expenses, and attorney fees are reasonable. *In re Disciplinary Action Against Boughey*, 1999 ND 205, ¶ 13, 602 N.W.2d 268. Recently, we have approved as reasonable an affidavit of disciplinary counsel's costs and expenses billing his attorney time at $75 per hour. *See In re Disciplinary Action Against [Bruce R.] Howe*, 2001 ND 7, ¶¶ 16–17, 621 N.W.2d 361.

[¶ 36] We conclude disciplinary counsel's attorney fees, billed at $75 per hour, are reasonable and may be assessed against Howe, as we are imposing discipline for his violations of the North Dakota Rules of Professional Conduct. Howe is also reasonably required to pay $4,010.24 to cover the costs of the disciplinary proceeding, as well as $943.15 for the cost of the hearing transcript.

### IV

[¶ 37] The disciplinary counsel had proposed that the hearing panel recommend a six-month suspension of Howe's license to

practice law in North Dakota. Ultimately, the hearing panel recommended suspending Howe from the practice of law for 60 days. Although disciplinary counsel has not argued for an increased suspension before this court, we reject the hearing panel's recommendation and impose a suspension of 120 days. *See In re Disciplinary Action Against [Bruce R.] Howe,* 2001 ND 7, ¶¶ 12, 15, 621 N.W.2d 361 (rejecting the hearing panel's recommended 30–day suspension and imposing a six-month suspension, because "the length of a suspension is a decision for this Court to make").

[¶ 38] Howe has appeared before the Disciplinary Board six times during his legal career. This disciplinary history weighs heavily against accepting the hearing panel's recommendation of only a 60–day suspension. *See In re Disciplinary Action Against Dvorak,* 2000 ND 98, ¶ 21, 611 N.W.2d 147 (warning that disciplinary orders are not "empty noise," but are intended to protect the public). In *Dvorak,* we imposed a one-year suspension when Dvorak had a history of four prior disciplinary actions and unlawfully had obstructed another party's access to evidence by intimidating threats. *Id.* at ¶¶ 9, 21. We also have suspended an attorney's license to practice law for six months as a result of making false statements and engaging in conduct involving dishonesty, fraud, deceit, and misrepresentation, when he did not have a prior disciplinary record. *See [Bruce R.] Howe,* 2001 ND 7, ¶¶ 10, 15, 621 N.W.2d 361; *see also In re Disciplinary Action Against Boughey,* 1999 ND 205, ¶¶ 9–10, 602 N.W.2d 268 (imposing a six-month suspension for an attorney who made unauthorized transfers from client trust accounts); *In re Disciplinary Action Against McDonald,* 2000 ND 87, ¶¶ 30, 41, 609 N.W.2d 418 (suspending an attorney for six months and one day for making false statements and offering evidence which he knew was false). We acknowledge that a lengthy suspension is grave punishment, yet we also have recognized an attorney's deliberate use of false testimony or falsified evidence in a judicial proceeding is antithetical to the standards of the legal profession. *See McDonald,* at ¶ 36.

[¶ 39] Here, Howe's misconduct involves failure to diligently represent and communicate with Johnson, as well as failure to expeditiously reduce to judgment Johnson's favorable monetary award after Howe's express promise to do so. In view of Howe's extensive prior disciplinary history, we conclude 120 days is an appropriate period of suspension.

## V

[¶ 40] We order Howe suspended from the practice of law for 120 days commencing June 1, 2001, and we order him to pay $4,953.39 for the costs and expenses of the disciplinary proceedings, including the cost of the hearing transcript.

[¶ 41] VANDE WALLE, C.J., KAPSNER, MARING, NEUMANN, JJ., and HUNKE, S.J.

[¶ 42] The Honorable MAURICE R. HUNKE, S.J., sitting in place of SANDSTROM, J., disqualified.